## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACHARY SLONAKER | : | |
| 267 Claypond Road | : | CIVIL ACTION |
| Sunbury, PA 17801 | : | |
| | : | |
| Plaintiff, | : | No. _____ |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| WEST BRANCH REGIONAL | : | |
| AUTHORITY | : | |
| 127 Girton Drive | : | |
| Muncy, PA 17756 | : | |
| | : | |
| Defendant | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      This action has been initiated by Zachary Slonaker (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against West Branch Regional Authority ("Defendant") for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*), Pennsylvania common law and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.  This Court has supplemental

---

[1] Plaintiff will move to amend his instant lawsuit to include claims under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission. Any claims under the PHRA though would mirror the instant claims identically.

jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5.      Plaintiff has properly exhausted his administrative remedies with respect to his ADA claims because he timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and files the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant is a company located at the above-referenced address that provides water and sewer sanitation services.

9.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff is a college-educated male, having earned a Bachelor's Degree in Geography and Planning.

12.     Plaintiff initially worked for Defendant as a paid intern in or about 2016.

13.     As a result of his exemplary performance during his internship, Plaintiff was hired as a full-time employee in or about December 2017.

14.     At all times relevant herein, Plaintiff worked at Defendant's Muncy, PA location.

15.     Plaintiff was initially hired as a Geographic Information Systems ("GIS") Technician.

16.     His job duties included, but were not limited to, performing geographic mapping and information-technology work for Defendant.

17.     Plaintiff was qualified for this job, as he possessed the requisite skill, education and experience for the position.

18.     Plaintiff was initially supervised by Eric Moore.

19.     Throughout his employment, Plaintiff performed his job in a satisfactory manner and was often issued praise for his work.

20.     Plaintiff was also issued raises and a promotion to GIS Specialist.

21.     In this position, Plaintiff's job duties included performing IT-related tasks for Defendant.

22.     Plaintiff was not issued any written discipline during his more than three years of employment.

23.     For the last approximate 1.5 years of his employment, Plaintiff was supervised by John Lynch (Deputy Director) and Kurt Hausammann (Executive Director).

24.     In or about August 2020, Plaintiff suffered a serious work-related knee injury which caused serious damage to his meniscus and anterior cruciate ligament ("ACL").

25.     Shortly thereafter, Plaintiff reported his work-related injury to Defendant and initiated a worker's compensation claim.

26.     Plaintiff also sought and continues to obtain medical treatment for his knee condition, including but not limited to physical therapy and orthopedic treatment.

27.     Plaintiff's knee condition interferes with and limits his ability to perform daily activities, including but not limited, to walking, running, standing, climbing, bending, kneeling, twisting, lifting and, at times, working.

28.     Despite Plaintiff's medical condition, he was able to perform all of the essential functions of his job, with accommodations.

29.     Once Plaintiff disclosed his work-related injury to Defendant and informed them of his need for some time off for treatment, Defendant's demeanor and treatment of Plaintiff changed for the worse.

30.     For example, Defendant's management began treating Plaintiff rudely, often ignoring him or responding in a curt and abrupt manner.

31.     Defendant also expressed annoyance with Plaintiff's medical condition and need for time off by, for example, pressuring him to come into the office despite initially allowing him to work from home (prior to August 2020), criticizing him for needing time off and asking him if his injury was "really that bad."

32.     In or about early January 2021, Plaintiff requested and took an approximate 5-week medical leave because of his knee condition.

33.     Plaintiff informed Defendant about his need to take this short medical leave.

34.     In response, Defendant spoke rudely to Plaintiff, including but not limited to, telling him he would still need to perform work during his medical leave.

35.     Plaintiff returned to work from his medical leave in or about mid-February 2021.

36.     Upon his return to work, Plaintiff informed Defendant that he had a few temporary restrictions, including limited ability to kneel or crawl.

37.     Thus, Plaintiff requested permission to rest his knee/leg when necessary.

38.     Almost immediately after returning from medical leave and requesting these additional accommodations, Plaintiff was issued three disciplines for alleged attendance issues, which are totally fabricated and untrue.

39.     Plaintiff disputed the disciplinary actions and reminded Defendant about his medical condition and need for accommodations (including periodic time off from work to obtain medical treatment).

40.     On or about February 17, 2021, approximately three days after returning from medical leave and requesting additional accommodations, Plaintiff was terminated by Defendant for untrue and pretextual reasons.

41.     Based on the foregoing, Plaintiff believes and therefore avers that he was terminated because of his actual/perceived disabilities and in retaliation for requesting reasonable accommodations and initiating/filing a worker's compensation claim.   He also avers that Defendants failed to accommodate his disabilities.

## COUNT I
## Violations of the Americans with Disabilities Act, as amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; [4] Hostile Work Environment]

42.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43.     Plaintiff suffers from qualifying health conditions under the ADA (as amended), which (at times) affect his ability to perform some daily life activities (as discussed *supra*).

44.     Plaintiff requested reasonable accommodations from Defendants, including time off from work for medical reasons and other accommodations.

45.     Plaintiff was terminated on or about February 17, 2021, shortly after disclosing his medical conditions to Defendant and requesting accommodations for same.

46.     Plaintiff was also subjected to increased hostility and animosity by Defendant's management after he disclosed his medical conditions and requested accommodations, including but not limited treating him rudely, making derogatory comments about Plaintiff's medical condition and need for time off, pressuring Plaintiff to come to the office (only after he suffered the work injury) and issuing him unwarranted discipline.

47.     Defendant's hostile treatment of Plaintiff occurred regularly over the course of approximately 6 months and made Plaintiff feel hurt, offended and uncomfortable.

48.     As a result, Plaintiff avers that he was subjected to a hostile work environment and terminated by Defendant because of: (1) his known and/or perceived disabilities; (2) his record of

impairment; and/or (3) because he requested accommodations, which constitutes unlawful retaliation.

49.     Defendant also failed to engage in an interactive process with Plaintiff, despite that he requested accommodations (in the form of medical leave/time off and other accommodations).

50.     These actions as aforesaid constitute violations of the ADA, as amended.

## COUNT II
## <u>Violations of Pennsylvania Common Law</u>
### (Worker's Compensation Retaliation)

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff was terminated in retaliation for initiating and/or filing a worker's compensation claim with Defendant.

53.     Defendant's conduct violates Pennsylvania common law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.      Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.       Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.       Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:       _____

Ari R. Karpf, Esq.
Jeremy M. Cerutti, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
Attorneys for Plaintiff

Dated: October 22, 2021